UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | } | Case No. 10-26552-TPA |
| | } | |
| RAY G. ANTHONY, | } | Chapter 7 |
| Debtor | } | |
| | } | Adversary No. 13-2253-TPA |
| | } | |
| PHILLIP ANTHONY, | } | Related to Document No. 34 |
| Plaintiff | } | |
| | } | Hearing:  11/4/13@11:30 p.m. |
| v. | } | |
| | } | |
| RAY G. ANTHONY, | } | |
| Defendant | } | |

RESPONSE TO LETTER FROM PHILLIP ANTHONY DATED 5 MARCH 2014

AND NOW, comes Robert Shearer, Chapter 7 Trustee, and files the within Response to

Letter from Phillip Anthony Dated 5 March 2014 and would show the Court:

PROCEDURAL HISTORY

1.      The above-captioned case was commenced by the Debtor's filing of a voluntary

petition for relief under Chapter 11 of the Bankruptcy Code on 14 September 2010.  The case

was converted to a case under Chapter 7 on 21 April 2011.

2.      The undersigned was appointed as the Chapter 7 Trustee on 25 April 2011.

3.      Based on the facts then known to him, the undersigned filed his Report of No

Distribution on 7 November 2012.

4.      On 8 November 2012, a final decree was issued, which discharged the

undersigned from his duties as Chapter 7 Trustee.

5.      On 18 April 2013, the Debtor filed a motion to reopen his case and a motion to

enforce the automatic stay and for a permanent injunction against the Plaintiff, who the Debtor

alleged was improperly attempting to collect on a pre-petition debt.

6.      On 17 June 2013, Plaintiff filed a response to the motion to enforce the automatic

stay and for permanent injunction.

7.      .On 17 June 2013, Plaintiff also filed a pleading styled as a "Motion to Revoke

Order Discharging Debtor [D.E. 191] Entered on June 27, 2012".  The Court treated the pleading

as an adversary complaint for revocation of discharge and docketed it at Adversary No. 13-2253-

TPA.  This pleading is hereinafter referred to as the "Complaint."

8.      On 31 July 2013, the Debtor filed a motion to dismiss the Complaint.  The Debtor

filed his supporting brief on 8 August 2013.

9.      On 5 September 2013, the Plaintiff filed his response in opposition to the motion

to dismiss and supporting brief.

10.     On 10 September 2013, this Court entered an order staying the litigation between

the Plaintiff and the Debtor and requiring the United States Trustee or the reappointed Chapter 7

Trustee to investigate the allegations in the Complaint and file a report summarizing the results

of the investigation by 9 October 2013.

11.     On 11 October 2013, this Court extended the deadline for the filing of the report

summarizing the results of the investigation to 10 November 2013.

12.     On 18 October 2013, the undersigned was reappointed as Chapter 7 Trustee.

13.     On 28 October 2013, this Court scheduled a status conference on the

undersigned's investigation for 4 November 2013.

14.     On 4 November 2103, a status conference was held on the undersigned's

investigation and a deadline for the filing of his report was set for 15 January 2014.

15.    On 16 January 2014, this Court entered an order extending the deadline for the filing of the undersigned's report to 15 April 2014.

16.    On 13 March 2014, the Plaintiff sent a letter to this Court and others.  This Court then ordered the undersigned to respond to the Plaintiff's letter by 27 March 2014 and scheduled a status conference for 10 April 2014, which was subsequently to 14 April 2014.

<u>THE ALLEGATIONS IN PLAINTIFF'S COMPLAINT</u>

17.    The allegations which prompted this Court to order an investigation were first made by the Plaintiff in the Complaint.  They appear at subparagraphs (C) through (R) of Paragraph 26.

18.    These allegations appear verbatim at Paragraph 25(C) to (R) of the Plaintiff's Response to Motion to Dismiss Complaint and at Pages 8 through 12 of his Brief in Opposition to Defendant's Motion to Dismiss Complaint.

19.    The allegation in Paragraph 25(C) is:

*Debtor listed cash on hand in Question 1 of his Schedule B, as $5,000.00 which was a lie.  When P. Anthony was staying at Debtor's home at 375 Wray Large Road, Clairton, PA where he lived with his long-time girlfriend Jo, on a visit to Pittsburgh, prior to September of 2010, Debtor showed P. Anthony is stash of one million dollars in cash at that house, and Debtor bragged to P. Anthony that he kept at least two million dollars in his house in cash for a rainy day situation.  This fact was confirmed to P. Anthony by Eric Anthony, a nephew of both him and Debtor who told P. Anthony within a short time before Debtor filed Chapter 11 Case in September of 2010, that Debtor has also told Eric that he had two million dollars in cash hidden at his Clairton home.  Where's the cash?*

ACTION TAKEN:

a.    Obtained affidavit from Barry Smoker, in which Smoker, after acknowledging reviewing the Complaint and the Plaintiff's letter of 5 March 2014, says:  *I have reviewed the allegations in both documents and I state herein that all such averments are false, and I am aware of no evidence, nor do I have knowledge, that would support any of the claims made by Phillip Anthony in this matter, including his claims regarding the assets allegedly concealed by Ray G. Anthony, or that the value attributed to various personal property owned by Ray G. Anthony is erroneous or false*;

b.    Obtained sworn declaration of Eric Anthony, in which Anthony says:

(a) *I have reviewed the allegations contained in both documents and I state herein that I believe that all such averments are false, and I am aware of no evidence, nor do I have knowledge, that would support any of the claims made by Phillip Anthony in this matter, including his claims regarding assets allegedly concealed by Ray G. Anthony, or that the values attributed to various items of personal property owned by Ray G. Anthony is erroneous or false*; and

(b) *Particularly, paragraph 26(c) of Phillip Anthony's Complaint claims that I stated to him shortly before the filing of Bankruptcy Ray G. Anthony that he had two million dollars in cash hidden at his Clariton home.  Said claim is false and has no factual basis, as I never made any such statement to Phillip Anthony*; and

c.    Interviewed Joan Christopher at the house she shares with the Debtor.  Ms. Christopher stated that she had never seen the cash alleged by the Plaintiff and believed the allegation to be untrue.

20.    The allegation in Paragraph 25(D) is:

*Debtor listed clothing with a value of $100.00 in Question 6 of his Schedule B which was also a lie. He had extensive amounts of expensive clothes, a huge collection of very expensive cowboy boots, and a large collection of fancy and expensive cowboy belt buckles, which were worth hundreds of thousands of dollars. Where are they?*

ACTION TAKEN:

a.       Obtained affidavit from Barry Smoker, in which Smoker, after acknowledging reviewing the Complaint and the Plaintiff's letter of 5 March 2014, says: *I have reviewed the allegations in both documents and I state herein that all such averments are false, and I am aware of no evidence, nor do I have knowledge, that would support any of the claims made by Phillip Anthony in this matter, including his claims regarding the assets allegedly concealed by Ray G. Anthony, or that the value attributed to various personal property owned by Ray G. Anthony is erroneous or false*;

b.       Obtained sworn declaration of Eric Anthony, in which Anthony says:

(a) *I have reviewed the allegations contained in both documents and I state herein that I believe that all such averments are false, and I am aware of no evidence, nor do I have knowledge, that would support any of the claims made by Phillip Anthony in this matter, including his claims regarding assets allegedly concealed by Ray G. Anthony, or that the values attributed to various items of personal property owned by Ray G. Anthony is erroneous or false;*

c.       Inspected the drawers and closets at the Debtor's house, which contained typical clothing for an adult male, much of which appeared well worn;

d.       Deposed the Debtor. The Debtor testified he purchased all his clothing for approximately $5,900.00 but believed its resale value would be $100.00.

21.       The allegation in Paragraph 25(E) is:

*Debtor listed miscellaneous jewelry with a value of $1,000 in Question 7 of his Schedule B which was a lie.  Debtor owned an extensive collection of very expensive watches, which alone had a value in excess of one million dollars.  Where are they?  P. Anthony has seen Debtor wearing these expensive watches many times over the years and he's seen the watches at Debtor's house in Clairton, PA.*

<u>ACTION TAKEN</u>:

a.      Obtained affidavit from Barry Smoker, in which Smoker, after acknowledging reviewing the Complaint and the Plaintiff's letter of 5 March 2014, says:  *I have reviewed the allegations in both documents and I state herein that all such averments are false, and I am aware of no evidence, nor do I have knowledge, that would support any of the claims made by Phillip Anthony in this matter, including his claims regarding the assets allegedly concealed by Ray G. Anthony, or that the value attributed to various personal property owned by Ray G. Anthony is erroneous or false*;

b.      Obtained sworn declaration of Eric Anthony, in which Anthony says:

(a) *I have reviewed the allegations contained in both documents and I state herein that I believe that all such averments are false, and I am aware of no evidence, nor do I have knowledge, that would support any of the claims made by Phillip Anthony in this matter, including his claims regarding assets allegedly concealed by Ray G. Anthony, or that the values attributed to various items of personal property owned by Ray G. Anthony is erroneous or false;*

c.      Inspected and photographed the watches at the Debtor's residence for use at the Debtor's deposition;

d.      Deposed the Debtor.  The Debtor testified that he did not recall paying more than $150.00 for a watch.  He also testified he had, "way back when" he sold his company,

purchased some expensive watches as well as some fake Rolex watches, but had given them to customers who purchased cars.

    e.    The undersigned questioned the Debtor at his deposition about a rider to his homeowner's policy that was in effect on the petition date.  The rider showed that the Debtor had insured a ring and three Rolex watches with a combined value of $137,437.00.  The Debtor said that it had been suggested to him that he should insure his jewelry but that he had not been the one who actually procured the insurance.  He denied having the ring.  He denied having Rolex watches with the values shown on the rider but admitted to having Rolex watches but testified that he had given them away before 2006.

    22.    The allegation in Paragraph 25(F) is:

*Debtor listed pistols and rifles in Question 8 of his Schedule F with a value of $25,000 which is a lie.  He is a gun collector, and he loves his guns.  He owned a collection of guns which had a value of far in excess of one million dollars prior to filing his Chapter 11. Where are they?*

    <u>ACTION TAKEN</u>:

    a.    Obtained affidavit from Barry Smoker, in which Smoker, after acknowledging reviewing the Complaint and the Plaintiff's letter of 5 March 2014, says:  *I have reviewed the allegations in both documents and I state herein that all such averments are false, and I am aware of no evidence, nor do I have knowledge, that would support any of the claims made by Phillip Anthony in this matter, including his claims regarding the assets allegedly concealed by Ray G. Anthony, or that the value attributed to various personal property owned by Ray G. Anthony is erroneous or false*;

      b.      Obtained sworn declaration of Eric Anthony, in which Anthony says:

(a) *I have reviewed the allegations contained in both documents and I state herein that I believe that all such averments are false, and I am aware of no evidence, nor do I have knowledge, that would support any of the claims made by Phillip Anthony in this matter, including his claims regarding assets allegedly concealed by Ray G. Anthony, or that the values attributed to various items of personal property owned by Ray G. Anthony is erroneous or false;*

      c.      Visited the Debtor's residence.  Observed two shotguns and a holster for a pistol.  Neither shotgun appeared to be a collectable or of high value.

      d.      Deposed the Debtor.  The Debtor testified a shotgun, a rifle, a pistol, an Anthony Crane gun, and two Civil War rifles.  The undersigned reviewed the values of the firearms with the Debtor, and the Debtor testified that he believed their present value was $26,000.00.

23.      The allegation in Paragraph 25(G) is:

      *Debtor has been a big time hunter for most of his adult life.  He had a huge number of collectibles in the form of mounts or stuffed animals, heads, bodies, etc., many of which are very rare and very expensive, before he filed Chapter 11 which had a value of at least several hundred thousands of dollars.  Where are they?*

      ACTION TAKEN:

      a.      Obtained affidavit from Barry Smoker, in which Smoker, after acknowledging reviewing the Complaint and the Plaintiff's letter of 5 March 2014, says:  *I have reviewed the allegations in both documents and I state herein that all such averments are false, and I am aware of no evidence, nor do I have knowledge, that would support any of the claims made by Phillip Anthony in this matter, including his claims regarding the assets allegedly concealed by*

*Ray G. Anthony, or that the value attributed to various personal property owned by Ray G.*

*Anthony is erroneous or false.*

    b.  Obtained sworn declaration of Eric Anthony, in which Anthony says:

(a) *I have reviewed the allegations contained in both documents and I state herein that I believe*

*that all such averments are false, and I am aware of no evidence, nor do I have knowledge, that*

*would support any of the claims made by Phillip Anthony in this matter, including his claims*

*regarding assets allegedly concealed by Ray G. Anthony, or that the values attributed to various*

*items of personal property owned by Ray G. Anthony is erroneous or false.*

    c.  Inspected the Debtor's house and outbuildings at 375 Wray Large Road,

Clairton, Pennsylvania.  There were five wall-hung mounts and one freestanding mount in an

outbuilding.

    d.  Deposed the Debtor.  He testified that he had had more mounts but had

given them away in 2001 or 2002 and that he had paid taxidermy fees of $200.00 to $300.00 for

each.

  24.  The allegation in Paragraph 25(H) is:

  *Debtor owns a personal underground gun range located in the Clairton, PA property*

*with 4 or 5 fully equipped shooting stations which P. Anthony has seen in person.  None of this*

*equipment is listed as assets in Ray Anthony's Schedules.*

  <u>ACTION TAKEN</u>:

    a.  Obtained affidavit from Barry Smoker, in which Smoker, after

acknowledging reviewing the Complaint and the Plaintiff's letter of 5 March 2014, says:  *I have*

*reviewed the allegations in both documents and I state herein that all such averments are false,*

*and I am aware of no evidence, nor do I have knowledge, that would support any of the claims*

*made by Phillip Anthony in this matter, including his claims regarding the assets allegedly*

*concealed by Ray G. Anthony, or that the value attributed to various personal property owned by*

*Ray G. Anthony is erroneous or false.*

   b.  Obtained sworn declaration of Eric Anthony, in which Anthony says:

(a) *I have reviewed the allegations contained in both documents and I state herein that I believe*

*that all such averments are false, and I am aware of no evidence, nor do I have knowledge, that*

*would support any of the claims made by Phillip Anthony in this matter, including his claims*

*regarding assets allegedly concealed by Ray G. Anthony, or that the values attributed to various*

*items of personal property owned by Ray G. Anthony is erroneous or false.*

   c.  Requested instructions from the Plaintiff on how to enter the gun range.

The Plaintiff stated, "It is an underground gun range in a separate building from the main house."

   d.  Viewed the Debtor's property at 375 Wray Large Road, Clairton,

Pennsylvania.  Photographed the above-ground building that formerly housed the gun range.

   e.  Deposed the Debtor.  The Debtor testified that the gun range was referred

to as underground because the back of the building that used to house it backs into a hill.

  25.  The allegation in Paragraph 25(I) is:

   *Prior to Debtor's filing of his Chapter 11 Cases, Debtor owned a large collection of*

*exotic/expensive automobiles before he filed his Chapter 11 which were worth millions of*

*dollars.  Where are they?*

   <u>ACTION TAKEN</u>:

   a.  Obtained affidavit from Barry Smoker, in which Smoker, after

acknowledging reviewing the Complaint and the Plaintiff's letter of 5 March 2014, says:  *I have*

*reviewed the allegations in both documents and I state herein that all such averments are false,*

*and I am aware of no evidence, nor do I have knowledge, that would support any of the claims*

*made by Phillip Anthony in this matter, including his claims regarding the assets allegedly*

*concealed by Ray G. Anthony, or that the value attributed to various personal property owned by*

*Ray G. Anthony is erroneous or false.*

      b.      Obtained sworn declaration of Eric Anthony, in which Anthony says:

(a) *I have reviewed the allegations contained in both documents and I state herein that I believe*

*that all such averments are false, and I am aware of no evidence, nor do I have knowledge, that*

*would support any of the claims made by Phillip Anthony in this matter, including his claims*

*regarding assets allegedly concealed by Ray G. Anthony, or that the values attributed to various*

*items of personal property owned by Ray G. Anthony is erroneous or false.*

      c.      Deposed the Debtor.  The Debtor testified that the automobiles the

Plaintiff was referring to belonged to Aqua Toy Store.  The Aqua Toy Store filed two bankruptcy

cases.  Chapter 11 No. 10-27811-TPA was dismissed.  Chapter 7 No. 11-24480 was closed as no-

asset case.  The undersigned was the trustee of the Chapter 7 case.

      26.      The allegation in Paragraph 25(J) is:

      *Prior to Debtor's filing of his Chapter 11 Case, Debtor paid approximately*

*twenty-five million dollars for the New Auto Toy Store business in Fort Lauderdale.  When he*

*closed down this business, he moved approximately ten million dollars of automobile to the Aqua*

*Toy Store property in Fort Lauderdale, and he purchased an adjacent parcel of land for*

*approximately two million dollars for storage of the automobiles.  What happened to this land?*

*Where are these automobiles?*

ACTION TAKEN:

a.      Obtained affidavit from Barry Smoker, in which Smoker, after acknowledging reviewing the Complaint and the Plaintiff's letter of 5 March 2014, says:  *I have reviewed the allegations in both documents and I state herein that all such averments are false, and I am aware of no evidence, nor do I have knowledge, that would support any of the claims made by Phillip Anthony in this matter, including his claims regarding the assets allegedly concealed by Ray G. Anthony, or that the value attributed to various personal property owned by Ray G. Anthony is erroneous or false.*

b.      Obtained sworn declaration of Eric Anthony, in which Anthony says:

(a) *I have reviewed the allegations contained in both documents and I state herein that I believe that all such averments are false, and I am aware of no evidence, nor do I have knowledge, that would support any of the claims made by Phillip Anthony in this matter, including his claims regarding assets allegedly concealed by Ray G. Anthony, or that the values attributed to various items of personal property owned by Ray G. Anthony is erroneous or false.*

27.      The allegation in Paragraph 25(K) is:

*Prior to Debtor's filing of his Chapter 11 Case, he owned personal planes worth approximately twenty million dollars.  The home base for these airplanes was the airport in West Mifflin, PA.  The value of the hangers and the offices at the airport was approximately five million dollars.  What happened to these hangar and offices?  Where are the airplanes?*

ACTION TAKEN:

a.      Obtained affidavit from Barry Smoker, in which Smoker, after acknowledging reviewing the Complaint and the Plaintiff's letter of 5 March 2014, says:  *I have reviewed the allegations in both documents and I state herein that all such averments are false,*

*and I am aware of no evidence, nor do I have knowledge, that would support any of the claims made by Phillip Anthony in this matter, including his claims regarding the assets allegedly concealed by Ray G. Anthony, or that the value attributed to various personal property owned by Ray G. Anthony is erroneous or false.*

b.    Obtained sworn declaration of Eric Anthony, in which Anthony says:

(a) *I have reviewed the allegations contained in both documents and I state herein that I believe that all such averments are false, and I am aware of no evidence, nor do I have knowledge, that would support any of the claims made by Phillip Anthony in this matter, including his claims regarding assets allegedly concealed by Ray G. Anthony, or that the values attributed to various items of personal property owned by Ray G. Anthony is erroneous or false.*

c.    Deposed the Debtor.  The Debtor testified that he did not have any airplanes in his name from at least 2006.  He further testified that the hangars and offices at the West Mifflin Airport were rented.  His counsel, David Fuchs, clarified that the company who actually rented the hangars and offices was Anthony Holdings, which went through a no-asset bankruptcy at Case No. Chapter 7 No. 11-26588-TPA.

28.    The allegation in Paragraph 25(L) is:

*Prior to Debtor's filing of his Chapter 11 Case, the Aqua Toy Store in Fort Lauderdale was located on waterfront property worth approximately seven million dollars with an inventory of boats, etc. worth approximately one and a half million dollars.  What happened to the land? Where are the boats and other inventory now?*

ACTION TAKEN:

a.    Obtained affidavit from Barry Smoker, in which Smoker, after acknowledging reviewing the Complaint and the Plaintiff's letter of 5 March 2014, says:  *I have*

*reviewed the allegations in both documents and I state herein that all such averments are false,*

*and I am aware of no evidence, nor do I have knowledge, that would support any of the claims*

*made by Phillip Anthony in this matter, including his claims regarding the assets allegedly*

*concealed by Ray G. Anthony, or that the value attributed to various personal property owned by*

*Ray G. Anthony is erroneous or false.*

       b.     Obtained sworn declaration of Eric Anthony, in which Anthony says:

(a) *I have reviewed the allegations contained in both documents and I state herein that I believe*

*that all such averments are false, and I am aware of no evidence, nor do I have knowledge, that*

*would support any of the claims made by Phillip Anthony in this matter, including his claims*

*regarding assets allegedly concealed by Ray G. Anthony, or that the values attributed to various*

*items of personal property owned by Ray G. Anthony is erroneous or false.*

       c.     The Aqua Toy Store has been through two bankruptcies..  Chapter 11 No.

10-27811-TPA was dismissed.  Chapter 7 No. 11-24480 was closed as no-asset case.  The

undersigned was the trustee of the Chapter 7 case.

     29.     The allegation in Paragraph 25(M) is:

     *Prior to Debtor's filing of his Chapter 11 Case, Debtor paid approximately three million*

*dollars for Anthony Aviation in Fort Lauderdale.  What happened to this property and these*

*business assets?*

     ACTION TAKEN:

       a.     Obtained affidavit from Barry Smoker, in which Smoker, after

acknowledging reviewing the Complaint and the Plaintiff's letter of 5 March 2014, says:  *I have*

*reviewed the allegations in both documents and I state herein that all such averments are false,*

*and I am aware of no evidence, nor do I have knowledge, that would support any of the claims*

*made by Phillip Anthony in this matter, including his claims regarding the assets allegedly*

*concealed by Ray G. Anthony, or that the value attributed to various personal property owned by*

*Ray G. Anthony is erroneous or false.*

> b.    Obtained sworn declaration of Eric Anthony, in which Anthony says:

(a) *I have reviewed the allegations contained in both documents and I state herein that I believe*

*that all such averments are false, and I am aware of no evidence, nor do I have knowledge, that*

*would support any of the claims made by Phillip Anthony in this matter, including his claims*

*regarding assets allegedly concealed by Ray G. Anthony, or that the values attributed to various*

*items of personal property owned by Ray G. Anthony is erroneous or false.*

> c.    Deposed the Debtor.  The Debtor testified that he had discovered he did

not possess the skills to operate an aviation facility and sold the business back to the seller it was

purchased from.

30.    The allegation in Paragraph 25(N) is:

*Debtor owned a home in Sunrise before filing his Chapter 11 Case which was worth*

*approximately one and a half million dollars.  What happened to this property?*

> ACTION TO BE TAKEN:

> a.    To be the subject of a supplementary deposition of the Debtor along with

such public records searches as may be necessary.

31.    The allegation in Paragraph 25(O) is:

*Debtor owned a building on Copans Road in Fort Lauderdale before filing his Chapter*

*11 Case.  This property was worth approximately two million dollars.  What happened to this*

*property?*

ACTION TO BE TAKEN:

a.    To be the subject of a supplementary deposition of the Debtor along with

such public records searches as may be necessary.

32.    The allegation in Paragraph 25(P) is:

*Debtor owned a business in Fort Lauderdale called Anthony Arms with a*

*substantial value before he filed Chapter 11.  P. Anthony performed extensive renovations on*

*that property in his capacity as a contractor.  What happened to this property and business?*

ACTION TAKEN:

a.    Obtained affidavit from Barry Smoker, in which Smoker, after

acknowledging reviewing the Complaint and the Plaintiff's letter of 5 March 2014, says:  *I have*

*reviewed the allegations in both documents and I state herein that all such averments are false,*

*and I am aware of no evidence, nor do I have knowledge, that would support any of the claims*

*made by Phillip Anthony in this matter, including his claims regarding the assets allegedly*

*concealed by Ray G. Anthony, or that the value attributed to various personal property owned by*

*Ray G. Anthony is erroneous or false.*

b.    Obtained sworn declaration of Eric Anthony, in which Anthony says:

(a) *I have reviewed the allegations contained in both documents and I state herein that I believe*

*that all such averments are false, and I am aware of no evidence, nor do I have knowledge, that*

*would support any of the claims made by Phillip Anthony in this matter, including his claims*

*regarding assets allegedly concealed by Ray G. Anthony, or that the values attributed to various*

*items of personal property owned by Ray G. Anthony is erroneous or false.*

c.      Antony Arms, which is also known as Ray Anthony Shooting, operates in the Pittsburgh area.  The undersigned is in the process of obtaining tax returns and financial statements to determine value of business

33.      The allegation in Paragraph 25(Q) is:

*Debtor owned a business in Pittsburgh named Phantom Motorcycles which had an inventory with a value of approximately one and a half million dollars prior to his filing his Chapter 11 Case.  What happened to this inventory?  Where is it now?  Did Debtor own the property where this business was located?  If so, what happened to it?*

ACTION TO BE TAKEN:

a.      Obtained affidavit from Barry Smoker, in which Smoker, after acknowledging reviewing the Complaint and the Plaintiff's letter of 5 March 2014, says:  *I have reviewed the allegations in both documents and I state herein that all such averments are false, and I am aware of no evidence, nor do I have knowledge, that would support any of the claims made by Phillip Anthony in this matter, including his claims regarding the assets allegedly concealed by Ray G. Anthony, or that the value attributed to various personal property owned by Ray G. Anthony is erroneous or false.*

b.      Obtained sworn declaration of Eric Anthony, in which Anthony says:

(a) *I have reviewed the allegations contained in both documents and I state herein that I believe that all such averments are false, and I am aware of no evidence, nor do I have knowledge, that would support any of the claims made by Phillip Anthony in this matter, including his claims regarding assets allegedly concealed by Ray G. Anthony, or that the values attributed to various items of personal property owned by Ray G. Anthony is erroneous or false.*

c.      Additionally, the undersigned is in the process of obtaining confirmation that the business ceased operating in 2010 and will review to whom distributions, if any, were made.

34.      The allegation in Paragraph 25(R) is:

*Debtor claims that the value of the stock and his interest in the incorporated and unincorporated businesses itemized in his answer to Question 13 on his Schedule B were unknown, and then states at the bottom of Page 1 of his Schedule B that the current value of his interest in all of these businesses is zero.  P. Anthony finds these allegations by Debtor to be incredulous.  If a forensic evaluation of these businesses were to be performed by objective people, P. Anthony is confident that there will be some substantial value as to Debtor's interest in one or more of the companies/businesses.*

<u>ACTION TAKEN OR TO BE TAKEN</u>:

a.      Century Steel Erectors, Inc.  **To be done**:  confirm all assets were reposed by United Bank.

b.      Century CM.  **To be done**:  confirm it was managing member of Century Steel Erectors, Inc. and had no assets of its own.

c.      Ray Anthony Shooting.  Also know as Anthony Arms.  **To be done**: obtain tax returns and financial statements to determine value of business.  Subject to lien Huntington National Bank, as discussed below.

d.      Phantom Motorcycles.  **To be done**:  Confirm it ceased operating in 2010 and review distributions, if any.

e.      Ray Anthony Leasing.  **To be done**:  Confirm it ceased operating in 2009 and review distribution, if any.

      f.      Ray Anthony International.  Chapter 11 No. 10-26576-TPA dismissed after sale of assets.

      g.      Sparks Crane.  Chapter 11 No. 12-25942-TPA dismissed on motion of debtor after sale of assets.

      h.      Anthony Holdings International.  Chapter 7 No. 11-26588-TPA.  Closed as a no-asset case.

      i.      Anthony Marina.  **To be done**:  confirm that it never conducted business.

      j.      Aqua Toy Store.  Chapter 11 No. 10-27811-TPA dismissed.  Chapter 7 No. 11-24480 closed as no-asset case.  The undersigned was the trustee of the Chapter 7 case.

      k.      Anthony Aviation.  **To be done**:  confirm it was liquidated in 2003 or 2004.

      l.      Anthony Leasing.  Twice filed Chapter 7 cases (09-26228-BM and 12-20202-CMB).  Both were closed as no-asset cases.

      m.      A&R Limited Partnership.  **To be done**:  obtain copies of tax returns and financial statements to confirm entity has ceased operating and review disbursement of any assets.

      n.      The Anthony Family Limited Partnership.  Chapter 11 No. 12-22257-TPA dismissed.  **To be done**:  (a) confirm the Debtor only has a one per cent (1%) interest; and  (b) obtain copies of tax returns and financial statements.

      o.      Ligonier Realty.  **To be done**:  confirm it has ceased operating and review distributions, if any.

<u>LIEN OF HUNTINGTON NATIONAL BANK</u>

35.     All of the assets on the Debtor's schedules, with the exception of 301 Meadow

Lark, Uniontown, Pennsylvania, were subject to a lien in favor of Huntington National Bank at

the time of the conversion of the case to Chapter 7.  See Document No. 630.

<u>FURTHER CONSIDERATIONS</u>

36.     In his letter dated 5 March 2014, the Plaintiff stated his concerns with the

handling and progress of the undersigned's investigation and generously offered how the

investigation should be conducted.

37.     For instance, the Plaintiff complains that the undersigned might have

compromised the investigation by going to the Debtor's house by arrangement rather than

obtaining an order under seal.

38.     The Plaintiff seems to have forgotten that site visits were discussed at the status

conference held on 4 November 2013.  If the Debtor was inclined to hide assets in advance of the

undersigned's visit, he had notice and ample time to do so.

39.     Additionally, the Plaintiff appears to have no appreciation of the costs which

would be incurred were the investigation to be conducted as he suggests.

40.     There are no funds in the estate.  All out-of-pocket costs must be borne by the

undersigned.  Moreover, the undersigned cannot put both his duties as trustee in other cases and

his private practice on hold to devote every waking minute to the investigation.  Every Chapter 7

Trustee is faced with this problem of limited resources of time and money.  That the Plaintiff is

particularly exercised at the alleged actions of the Debtor should not be allowed to override such

fundamental considerations.

41.     The undersigned also believes it appropriate to note that while the Plaintiff has been quick to point out how the investigation should be conducted, he has provided little in the way of concrete evidence, as opposed to allegations or suggestions of who to depose or whose house to raid at dawn.  To date, in the way of concrete evidence, the undersigned has been provided by the Plaintiff with a copy of a deed, bank statement from 2004, a HUD-1 from 2004 and a letter from 2004.

<u>CONCLUSION</u>

The undersigned believes it would be premature to state a conclusion based on the current state of his investigation.

WHEREFORE, the Trustee files the within Response to Letter of Phillip Anthony Dated 5 March 2014.

Respectfully submitted,

*/s/Robert Shearer*
Robert Shearer
Chapter 7 Trustee

PA Bar #83745

749 Hyde Park Road
Leechburg, PA  15656
(724) 236-0267
information@robertshearer.com

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | } | Case No. 10-26552-TPA |
| | } | |
| RAY G. ANTHONY, | } | Chapter 7 |
| Debtor | } | |
| | } | Adversary No. 13-2253-TPA |
| | } | |
| ROBERT SHEARER, Trustee, | } | Related to Document No. 29 |
| Movant | } | |
| | } | Hearing:  11/4/13@11:30 a.m. |
| v. | } | |
| | } | |
| NO RESPONDENT | } | |

CERTIFICATE OF SERVICE OF
MOTION FOR EXTENSION OF TIME TO FILE REPORT
ON INVESTIGATION OF ALLEGATIONS MADE BY PHILLIP ANTHONY

I certify under penalty of perjury that I served the above-captioned plead on the parties at the addresses specified below or on the attached list on **15 January 2014**.

The type(s) of service made on the parties was first class mail.

If more than one method of service was employed, this certificate of service groups the parties by the type of service.

EXECUTED ON:  **15 January 2014** By:          */s/Robert Shearer*
                                                        Robert Shearer
                                                        Chapter 7 Trustee

                                                        PA Bar #83745

                                                        Robert Shearer, P.C.
                                                        749 Hyde Park Road
                                                        Leechburg, PA  15656
                                                        (724) 236-0267
                                                        information@robertshearer.com

Office of the United States Trustee
Liberty Center, Suite 970
1001 Liberty Avenue
Pittsburgh, PA  15222

Robert O. Lampl, Esquire
David Fuchs, Esquire
960 Penn Avenue, Suite 1200
Pittsburgh, PA  15222

Francis C. Sichko, Esquire
83 Linden Road
Canonsburg, PA  15317